RECORD NO. 15-1505

IN THE

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

## FOR THE FOURTH CIRCUIT

WILLIAM ROBERT ANDERSON, JR.;
DANNI SUE JERNIGAN,

*Debtors - Appellants,*

v.

WAYNE HANCOCK; TINA HANCOCK,

*Creditors - Appellees,*

JOHN F. LOGAN

*Trustee - Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
AT RALEIGH

**RESPONSE BRIEF OF CREDITORS-APPELLEES
WAYNE HANCOCK AND TINA HANCOCK**

Theodore A. Nodell, Jr.
N.C. State Bar Number: 3239
NODELL GLASS & HASKELL, L.L.P.
5540 Centerview Drive, Suite 416
Raleigh, NC 27606
(919) 821-2600
tnodell@nghlaw.org

*Counsel for Creditors-Appellees
Wayne Hancock and Tina Hancock*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. <u>15-1505</u>        Caption: <u>William Anderson, Jr. & Danni Sue Jernigan v. Wayne & Tina Hancock</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Wayne Hancock and Tina Hancock</u>
(name of party/amicus)

_____

who is _____<u>Appellees</u>_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.  Does party/amicus have any parent corporations?                              ☐ YES ☑ NO
    If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?
                                                                                 ☐ YES ☑ NO
    If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐YES ☑NO
If yes, identify entity and nature of interest:


5.    Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:


6.    Does this case arise out of a bankruptcy proceeding?  ☑ YES ☐NO
If yes, identify any trustee and the members of any creditors' committee:
John F. Logan
Chapter 13 Bankruptcy Trustee
c/o Michael B. Burnett
P.O. Box 61039
Raleigh, NC 27661

Signature: _____    Date: 5/21/2015

Counsel for: Appellees Wayne & Tina Hancock

# CERTIFICATE OF SERVICE
****************************

I certify that on _____ May 21, 2015 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Travis P. Sasser
Sasser Law Firm
Attorneys for Appellants
2000 Regency Parkway, Suite 230
Cary, NC 27518

John F. Logan
Chapter 13 Bankruptcy Trustee
c/o Michael B. Burnett
P.O. Box 61039
Raleigh, NC 27661

_____
(signature)

5/21/2015
_____
(date)

- 2 -

# TABLE OF CONTENTS

<u>Page</u>

CORPORATE DISCLOSURE

TABLE OF AUTHORITIES ......................................................................... ii

STATEMENT OF JURISDICTION MATTER
AND JURISDICTION ...................................................................................1

STATEMENT OF ISSUES PRESENTED ....................................................2

STATEMENT OF THE CASE .......................................................................2

SUMMARY OF THE ARGUMENT .............................................................2

STANDARD OF REVIEW ............................................................................3

ARGUMENT ..................................................................................................3

     1.     The effect of the Bankruptcy Code's cure provisions in §
1322(b)(3) and (5) only serve to nullify and de-accelerate loans
which were previously accelerated by creditors ...................................4

     2.     The Hancocks' claim is protected by the anti-modification
provision in § 1322(b)(2) ...................................................................12

CONCLUSION .............................................................................................13

CERTIFICATE OF COMPLIANCE ...........................................................14

CERTIFICATE OF FILING AND SERVICE .............................................15

# TABLE OF AUTHORITIES

## CASES

*In re 139-141 Owners Corp.*,
  313 B.R. 364 (Bankr. S.D.N.Y., 2004)...........................................................7

*In re Computer Learning Centers, Inc.*,
  407 F.3d 656 (Fed. 4th Cir., 2005) .............................................................1, 2

*In re Consolidated Properties Ltd. Partnership*,
  152 B.R. 452 (Bankr.D.Md.1993) ................................................................10

*Botkin v. Dupont Community Credit Union*,
  650 F.3d 396, 65 Collier Bankr. Cas. 2d 1320 (4th Cir. 2011) ........................3

*In re Dixon*,
  228 B.R. 166 (W.D. Va., 1998) ....................................................................10

*In re: Frazer*,
  377 B.R. 621 (B.A.P. 9th Cir. 2007) ...........................................................5, 6

*In re Litton*,
  330 F.3d 636 (4th Cir., 2003) ......................................................................12

*In re Olsen*,
  363 B.R. 908 (B.A.P. 8th Cir. 2007) .............................................................9

*In re Schum*,
  112 B.R. 159 (Bankr. N.D.Tex. 1990) .........................................................12

*In re: Taddeo*,
  685 F.2d 24 (2d Cir. 1982) .....................................................................5, 6, 7

*In re Terry, Ltd. Partnership*,
  7 F.3d 241 (7th Cir. 1994) ..........................................................................10

*Till v. SCS Credit Corp.*,
  541 U.S. 465 (2004).....................................................................................10

## STATUTES

11 U.S.C. § 1322(b)(2)..................................................................................1, 2, 3, 12

11 U.S.C. § 1322(b)(3)............................................. 1, 2, 3, 4, 6, 7, 8, 11, 12

11 U.S.C. § 1322(b)(5)......................................... 1, 2, 3, 4, 5, 6, 7, 8, 9, 11, 12

28 U.S.C. § 158(a) ...........................................................................................1

## OTHER AUTHORITIES

Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy
(16th ed. vol. 8 2015) ..................................................................................5

NOW COMES Appellees Wayne Hancock and Tina Hancock (hereinafter "the Hancocks"), by and though undersigned counsel and respectfully submits this Brief in this cause.  Based on the arguments and reasons set forth below, the Hancocks contend the original decision issued by the Honorable David M. Warren, United States Bankruptcy Judge, allowing an Objection to Confirmation in favor of the Hancocks and entered on September 5, 2014 (Order, Docket No. 35), along with the findings by the Honorable Louise W. Flanagan, United States District Court Judge, were not in error and should be upheld by this Court.

## STATEMENT OF SUBJECT MATTER AND JURISDICTION

The issues on appeal in this matter arise from Title 11 of the United States Code (hereinafter referred to as "the Bankruptcy Code"), and focuses on certain permissible provisions in a Chapter 13 plan.  Specifically, the effect of cure under §§ 1322(b)(3) and (5) of the Bankruptcy Code and whether § 1322(b)(2) is applicable to the case at hand are presented for this Court's interpretation.

The issues contained herein are on appeal from orders of the bankruptcy court and the United States District Court.  Pursuant to 28 U.S.C. § 158(a), this Court has jurisdiction to hear appeals "'from final judgments, orders, and decrees entered by bankruptcy courts', and § 158(d) gives [this Court] jurisdiction over 'appeals from all final decisions, judgments, orders, and decrees entered' by district courts reviewing bankruptcy court decisions under § 158(a)." <u>In re:</u>

1

<u>Computer Learning Ctrs, Inc. v. Guberman</u>, 407 F.3d 656, 660 (4th Cir. 2005).

## <u>STATEMENT OF THE ISSUES PRESENTED</u>

1.    Whether a cure proposed in the Chapter 13 plan of William Robert Anderson, Jr. and Danni Sue Jernigan (hereinafter "Debtors") and pursuant to §§ 1322(b)(3) and (5) has any effect on the terms, specifically an interest rate increase which went into effect several months prior to the Debtors' Chapter 13 petition.

2.    Whether the claim held by the Hancocks in Debtors' plan is subject to the anti-modification provision of § 1322(b)(2) to prevent the Debtors from adjusting the applicable interest rate of 7.00%.

## <u>STATEMENT OF THE CASE</u>

Appellees are in agreement with Appellants' Statement of the Case and Statement of the Facts.   Appellees have no objections or amendments to Appellants' Statement of the Case and Statement of the Facts as filed in their brief on July 30, 2015 and herein incorporate same in Appellees' Brief.

## <u>SUMMARY OF THE ARGUMENT</u>

While §§ 1322(b)(3) and (5) allow Chapter 13 debtors' plans to include provisions to cure any default, the effect of that cure has no impact on the Hancocks ability and right to collect interest rate on their claim at the current rate of 7.00%.  The Hancocks do not dispute the distinction between the Bankruptcy Code's assumed definitions of "cure" and "modification". The Hancocks simply

contend that "cure" under the code has no effect to reverse the current interest rate of 7.00% on the Note.

As the Hancocks' position is cure under the Debtors' plan has no effect on the interest rate, the Hancocks further contend that any other attempt to tamper with the current interest rate of 7.00% through the Debtors' plan is an impermissible modification under § 1322(b)(2).

## STANDARD OF REVIEW

The issues contained herein are based on statutory interpretations of the Bankruptcy Code and therefore are reviewed *de novo*. Botkin v. Dupont Cmty. Credit Union, 650 F.3d 396, 398 (4th Cir. 2011).

## ARGUMENT

The Hancocks do not dispute the Debtors' position of the difference between "cure" and "modification" as treated under the Bankruptcy Code. However, Debtors' issue on appeal focuses on the cure provision as a means to nullify the event of default which triggered the interest rate increase from 5.00% to 7.00% as allowed in the underlying Note. The Hancocks contend the cure provisions only de-accelerate long-term debts to allow Debtors to maintain a monthly payment schedule rather than require Debtors to remit the full outstanding loan balance. As such, a cure under 11 U.S.C. §§ 1322(b)(3) and (5) does not nullify any other consequences of default as set out in the agreement between the parties such as a

lapse in insurance coverage, failure to fund escrow accounts, liability for late fees, attorney's fees or other recoverable items such as increased interest rates. Consequently, the Hancocks are entitled to post-petition interest at the increased rate of 7.00%.

1.    **The effect of the Bankruptcy Code's cure provisions in § 1322(b)(3) and (5) only serve to nullify and de-accelerate loans which were previously accelerated by creditors.**

Section 1322(b)(3) of the Bankruptcy Codes sets forth one of several permissible components of a Chapter 13 plan, including the ability to:

"provide for the curing or waiving of any default..."

11 U.S.C. § 1322(b)(3).  In conjunction with the ability of Chapter 13 debtors to cure defaults through their plan, § 1322(b)(5) permits a Chapter 13 plan to cure and maintain payments on long-term debts or debts to be paid beyond the final payment due date under the plan.  Specifically, the Bankruptcy Code permits a Chapter 13 plan to:

"provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due."

11 U.S.C. § 1322(b)(5).  In viewing § 1322(b)(3) with § 1322(b)(5), the Bankruptcy Code contemplates acceleration as the consequence of default subject to its cure and maintain provision.  Essentially, acceleration is triggered by an act

4

of default by the debtor and once triggered, requires payment of one final lump sum of the outstanding indebtedness rather than allow smaller payments spread throughout a period of time.   De-acceleration as a result of cure under § 1322(b)(5) effectively permits those debtors to now resume the smaller payments on the indebtedness spread over a period of time, or in other words, maintain payments, rather than leave debtors with the only option of remitting a lump sum of the outstanding indebtedness.  If the event and consequence of default to be cured is not acceleration, then the "maintenance of payments" portion of § 1322(b)(5) is rendered meaningless.

Acceleration is also observed in *Collier's* as the event of default to be cured under § 1322(b)(5) where, "[T]he debtor may maintain the contract payments during the course of the plan, without acceleration based upon a repetition default, by proposing to cure the default within a reasonable time."  Alan N. Resnick & Henry J. Sommer, <u>Collier on Bankruptcy</u> (16th ed. vol. 8 2015).  In fact, the case law offered in support of the Debtors' contention actually highlights all the more reason why § 1322(b)(5) is intended to cure accelerated debts.  See <u>In re: Taddeo</u>, 685 F.2d 24 (2d Cir. 1982); and <u>In re: Frazer</u>, 377 B.R. 621 (B.A.P. 9th Cir. 2007).

The debtor in *Taddeo* sought to restore pre-default contract terms upon curing default through a Chapter 13 plan.  The creditor from *Taddeo* accelerated the entire outstanding balance of the loan upon the debtor's failure to make

monthly mortgage payments. Despite debtor's attempt to cure the default by remitting the past due payment amount prior to acceleration, the creditor declared the entire amount due and refused to accept any cure payments less than the full amount of the debt on the premise that the cure amount is now the entire amount due.

The court in *Taddeo* reached the conclusion that the cure provisions as provided in the debtor's plan had the effect to de-accelerate the loan because the "history and the policy discussed above compel the conclusion that § 1322(b)(5) was intended to permit the cure and de-acceleration of secured long-term residential debt accelerated prior to the filing of a Chapter 13 petition." *Taddeo* at 27.

In *Frazer*, the creditor opted to accelerate an unpaid loan balance. Pursuant to the terms of the underlying agreement, the debtors then had 30 days to remit the accelerated loan balance and failure to do so would result in the debtors' forfeiture of their rights and equity as part of a contract for deed transaction. Relying on *Taddeo*, the *Frazer* court reached the same conclusion and allowed the cure provisions to de-accelerate the loan and restore the debtors' ability to continue monthly payments rather than require the respective debtors to remit the full outstanding balance on their loan obligations.

While the respective courts in *Taddeo* and *Frazer* treated the §§ 1322(b)(3)

6

and cure as a means to restore pre-default contract terms, the default in those cases caused the loan obligation to accelerate. By allowing cure to nullify the default and restore the original contract payment schedule, the court in those cases de-accelerated the loan which allowed for treatment through the Chapter 13 plan. Additionally, "*[I]n re Taddeo* says nothing whatsoever about reinstatement of the pre-default interest rate." In re 139-141 Owners Corp., 313 B.R. 364, 368 (Bankr. S.D.N.Y. 2004). And notably, neither case makes mention of waiving any other consequence of the respective debtors' default such as late fees, penalties or attorney's fees and the effect of their proposed Chapter 13 cure provisions. This further indicates the effect of cure pursuant to §§ 1322(b)(3) and (5) shall only be limited to allowing debtors to de-accelerate loan obligations and not nullify other consequences of default such as increased interest rates.

In the present case, the Hancocks seek only to collect post-petition payments at an interest rate of 7.00%. While the original interest rate under the Note was 5.00%, the Debtors' failure to remit timely monthly payments triggered a higher interest rate to become effective for the remaining term of the loan. However, at all times following this initial event of default giving rise to the interest rate of 7.00%, Debtors always had the continuing ability to maintain monthly payments to the Hancocks, albeit at the higher interest rate of 7.00%. In essence, the original contract between the Hancocks and Debtors fixing the interest rate of 5.00% was

7

replaced by a new contract fixing the interest rate at 7.00%, which became effective once the Hancocks declared so upon Debtors' failure to remit timely monthly payments.

Additionally, the underlying Note now with the effective 7.00% interest rate does not include any provisions for future changes in interest rates if Debtors cured any default. As previously discussed, the effect of cure under § 1322(b)(5) does not serve to reinstate a pre-default interest rate if the obligation was not accelerated by the Hancocks. Furthermore, the "cure" proposed in Debtors' plan to the Hancocks pursuant to § 1322(b)(3) is not wholly aligned with what the Hancocks find was the intent of the Bankruptcy Code. While foreclosure proceedings were initiated, the Debtors at all times were given the opportunity to remit reinstatement amounts to continue making monthly payments, further indicating the loan balance was never accelerated. At no point did the Hancocks accelerate the indebtedness under the Note when the interest rate was at 5.00% or 7.00%. The continued failure of Debtors to remit any monthly payments prompted the Hancocks to initiate foreclosure. Even if the Debtors remitted all their past due monthly payments to the Hancocks absent a Chapter 13 petition, the increased interest rate of 7.00% would remain applicable as it was now incorporated into a new contract between the Hancocks and Debtors. As such, the cure provisions under §§ 1322(b)(3) and (5) do not have any effect to undo the effective interest rate of

8

7.00%.

Debtors' brief also cites to *In re Olsen* in which § 1322(b)(5) cured a default which did not result in acceleration. *In re Olsen,* 363 B.R. 908 (B.A.P. 8th Cir. 2007. However, the facts of *Olsen* are distinguishable from this matter. In *Olsen*, the debtors executed two (2) Promissory Notes payable to Habitat for Humanity. The debtors were only obligated to remit monthly payments on Note 1 and once paid in full, the obligation under the Note 2 would be deemed satisfied. However, any default by the debtors on Note 1 caused the full obligation of the Note 2 to become due immediately. While not specifically called an acceleration, the practical effect of this arrangement resulted in an acceleration of Note 2. While the court in *Olsen* allowed the debtors to cure the default on Note 1 which prompted the full amount Note 2 to become due immediately, it still required debtors to provide for some plan treatment of Note 2 in addition to cure provisions for Note 1. *Olsen* at 911. This result indicates the court was willing to de-accelerate Note 2, but not willing to declare the obligation in Note 2 was not payable even though the debtors' Chapter 13 plan included provisions to cure the default on Note 1 which triggered the indebtedness on Note 2 to become payable. Additionally, simply providing cure provisions in a Chapter 13 plan does not immediately have the effect of actually curing default.

It is also notable that the terms of the underlying Note were negotiated

between the Debtors and the Hancocks and reduced to a written contract and collection at a default rate of interest as a means to further protect the value of the bargain between the parties. In its simplest form, interest is money paid by debtors for the use of creditors' money in the present which debtors will not otherwise have access. <u>Till v. SCS Credit Corp.</u>, 541 U.S. 465, 474 (2004). Likewise, the payment of interest compensates creditors as they will not be able to presently use the money loaned to invest or re-invest in other property. Interest payments and the rates at which they are determined depend on a variable of factors which include the amount of money loaned, the length of time for repayment of the loan and the risk of loss to the creditors of the money loaned. Notably, the risk of loss to creditors is correlated to the likelihood of repayment or default on the part of the debtors. *Id.*

In contemplation of that possible risk of loss, Debtors and the Hancocks negotiated two interest rates in the underlying Note: 1) the fixed interest rate at 5.00% so long as Debtors' remained in good standing on the loan obligation, and 2) an increased fixed interest rate at 7.00% for the remaining term of the Note should Debtors' fail to remain in good standing on the loan obligation. By providing for a possible increase in the interest rate, all parties implicitly agreed the Hancocks are entitled to more on interest payments as a means to compensate them for the risk of loss based on Debtors failure to perform on the loan obligation.

10

Default interest rates have also been found to be "necessarily higher than basic interest rates in order to compensate creditors for both the predictable and unpredictable costs of monitoring the value of collateral in default situations."  In re Dixon, 228 B.R. 166 (W.D. Va., 1998) (citing In re Terry, Ltd. Partnership, 27 F.3d 241, 244 (7th Cir. 1994); In re Consolidated Properties Ltd. Partnership, 152 B.R. 452, 457 (Bankr.D.Md.1993)).

If the effect of cure provisions in §§ 1322(b)(3) and (5) were used to reverse the interest rate increase in the Hancocks' Note, the result argued by Debtors would imply that any and all prior acts of default may be cured such that any consequences, even bargained for terms in a contract, would be meaningless. Specifically, the effect cure provisions of §§ 1322(b)(3) and (5) shall only be reserved for acts of default which are present at the time of filing a Chapter 13 petition.  For example, assume contract with term of twenty (20) years contains three possible interest rate increases, all of which become effective upon the debtor's default for lack of payment.  After three (3) years, the first interest rate increase occurs upon debtor's first act of default yet debtor continues to make payments on the contract at the first increased rate for five (5) years.  During year eight (8) debtor defaults again and the second interest rate increase occurs.  Debtor continues to make payments on the contract at the second increased rate.  Finally, during year ten (10), debtor defaults again and files a Chapter 13 petition and plan

11

which provides for cure. In this scenario, § 1322(b)(5) is inapplicable since the default did not cause an acceleration of the loan. And while cure under § 1322(b)(3) which allows for "curing or waiving of any default" is applicable to this scenario, it should only be limited to prevent the third interest rate increase. It would be inequitable to creditors to allow § 1322(b)(3) to cure all prior acts of default which triggered the first two (2) interest rate increases, especially since all parties assented to the terms at the time of the original contract. Likewise in the present case, the prior default of the Debtors which resulted in the interest rate increase was wholly separate from the default which prompted the Hancocks to initiate foreclosure. As such, the effect of cure under §§ 1322(b)(3) and (5) should be limited to allow the Debtors an opportunity to remit all their past due payments but at the current 7.00% interest rate.

**2.    The Hancocks' claim is protected by the anti-modification provision in § 1322(b)(2).**

As described above, the Hancocks posit the cure in §§ 1322(b)(3) and (5) have no effect on the increased interest rate payable on the Debtors' obligation. Without the effect of cure to reverse the interest rate increase, the Hancocks' claim shall also be protected under § 1322(b)(2) which states a Chapter 13 plan may:

> "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence..."

12

11 U.S.C. 1322(b)(2). The Hancocks hold a claim secured only by the Debtors' principal residence and pursuant to § 1322(b)(2), such claims cannot be modified by the Debtors' plan. Modifications prohibited by § 1322(b)(2) include "any fundamental alteration in a debtor's obligations, e.g., lowering monthly payments, converting a variable interest rate to a fixed interest rate, or extending the repayment term of a note." In re Litton, 330 F.3d 636 (4th Cir. 2003) (citing to In re Schum, 112 B.R. 159, 161-62 (Bankr. N.D.Tex. 1990). Since the increased interest rate of 7.00% was bargained for between the Debtors and the Hancocks and incorporated as a term in the underlying Note, Debtors' plan may not modify that interest rate.

## CONCLUSION

As the loan obligation has not been accelerated and the Note allows for use of an increased interest rate upon default, the Hancocks pray the Court find that use of the effective interest rate at 7.00% is appropriate for calculating the Debtors' conduit payment in the amount of $1,696.52 and uphold the original Bankruptcy Court Order entered on September 5, 2014.

This the 31st day of August, 2015.

13

/s/Theodore A. Nodell, Jr.
Theodore A. Nodell , Jr.
Attorney for The Hancocks
N.C. State Bar Number: 3239
Nodell, Glass & Haskell, L.L.P.
5540 Centerview Drive, Suite 416
Raleigh, NC 27606
(919) 821-2600

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume requirement of Fed. R. App. P. 32(a)(7)(B)(ii), because it contains 3,161 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface (Times New Roman) using Microsoft Word   in 14-point font.

This the 31st day of August.

 /s/ Theodore A. Nodell, Jr.
Theodore A. Nodell , Jr.
Attorney for The Hancocks
N.C. State Bar Number: 3239
Nodell, Glass & Haskell, L.L.P.
5540 Centerview Drive, Suite 416
Raleigh, NC 27606
(919) 821-2600
Counsel for Appellees

14

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on August 31, 2015, I filed the foregoing Response Brief of Creditors-Appellees Wayne Hancock and Tina Hancock with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by hand delivery and electronically using the CM/ECF system, which will send electronic notification of such filing to all counsel of record.

This the 31st day of August.

         /s/ Theodore A. Nodell, Jr.
         Theodore A. Nodell , Jr.
         Attorney for The Hancocks
         N.C. State Bar Number: 3239
         Nodell, Glass & Haskell, L.L.P.
         5540 Centerview Drive, Suite 416
         Raleigh, NC 27606
         (919) 821-2600

         Counsel for Appellees